Per Curiam.

Section 4141.29, Revised Code, so far as pertinent to this appeal, reads as follows:
“(C) Notwithstanding division (A) of this section, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment with respect to which the administrator finds that such individual: < Í # # #
“(2) Lost his employment or has left his employment by reason of a labor dispute other than a lockout at the factory, establishment, or other premises at which he was employed, as long as such labor dispute continues * * V’
As stated in,the decision of the referee, “there is no doubt that a labor dispute existed in the instant case, nor has there been any attempt by the parties to contend otherwise. ’ ’
The determinative question is whether, in this case, there was “a labor dispute other than a lockout.”
Were we concerned only with a question of fact, we would be disposed, as was the majority of the Court of Appeals, to leave undisturbed the “conclusions of fact” found by the referee and the Board of Review. Brown-Brockmeyer Co. v. Roach, 148 Ohio St., 511, 76 N. E. (2d), 79. The controlling facts in this case, however, are all stipulated. It remains only to determine whether, as a matter of law, under all the admitted facts of this case a “lockout” existed.
A lockout has been defined as a cessation of the furnishing of work to employees or a withholding of work from them in an effort to get for the employer more desirable terms. Iron Molders’ Union v. Allis-Chalmers Co., 166 F., 45, 52, 20 L. R. A. (N. S.), 315, 91 C. C. A., 631; 25 Words and Phrases, 566; 33 Ohio Jurisprudence (2d), 189, Section 65.
Such a definition does not circumscribe all the manifestations of an alleged lockout situation. It does not, of course, confine a lockout to an actual physical closing of the place of employment. See Barnes v. Hall, 285 Ky., 160, 146 S. W. (2d), 929.
A detailed discussion of the term may be found in Almada v. Administrator, Unemployment Compensation Act, 137 Conn., 380, 77 A. (2d), 765, where the court said:
“The imposition by the employer of changes in working conditions or wages, even though they deprive the employees of *355 some advantage they already possess, does not necessarily constitute a lockout. Changes in the terms of employment might still be such that under all the circumstances the employees would be expected in reason to accept them rather than quit work. To constitute a lockout * * * the conditions of further employment announced by the employer must be such that the employees could not reasonably be expected to accept them and they must manifest a purpose on the part of the employer to coerce his employees into accepting them or some other terms. * * *
* TL.e point is that, in order to constitute a lockout, the conduct of the employer in laying down terms must lead to unemployment inevitably in the sense that the employees could not reasonably be expected to accept the terms and, in reason, there was no alternative for them but to leave their work. The real test whether the imposition by the employer of changed conditions of employment is a withholding of work so as to constitute a lockout lies in the question whether the conditions imposed are such that his employees could not be expected to continue work under them and, in reason, they had no other course open to them but to leave their employment. ’ ’
If the facts in this case had been that the request to continue work at reduced wages was made unexpectedly and without any opportunity for prior negotiations, we might be inclined to agree that such request was unreasonable. However, the undisputed facts in this case are that for at least two and a half months before the expiration of this contract the union was aware of the straitened circumstances of the company and of its announced intention not to continue the contract. A notice of the inability to agree was filed with the Federal Mediation and Conciliation Service some six weeks prior to the expiration of the contract.
It must be borne in mind that the company here, unlike the ordinary private corporation which can pass its increased costs on to its customers, is a public utility dependent upon the action of the city council in negotiating a franchise to operate at all in the city of Zanesville.
In the light of all these circumstances, the ten per cent wage cut announced by the company as a condition of further employ *356 ment was not an unreasonable one and did not manifest a purpose on the part of the company to coerce the employees into accepting it. Since it was not sucb conduct as must lead to unemployment inevitably, in the sense that the employees could not reasonably be expected to accept it, it did not constitute a lockout under the statute.
This view of the case precludes the necessity of our considering the interesting question of whether, assuming that a lockout occurred on December 1, 1954, such lockout ended with the offer of the company made on December 8, 1954.
The judgment of the Court of Appeals sequentially affirming the decisions of the administrator and the Board of Review is reversed.

Judgment reversed.

Weygandt, C. J., Stewart, Taet, Matthias, Bell and Herbert, JJ., concur.
Zimmerman, J., dissents. ■